**UNITED STATES of America, Appellee,**

v.

**Thomas J. WILLIAMS, Appellant.**

**No. 81–1211.**

United States Court of Appeals, Eighth Circuit.

Submitted June 19, 1981.

Decided Aug. 20, 1981.

Amanda M. Darr (argued), Roxanne Barton Conlin, U. S. Atty., Des Moines, Iowa, for appellee.

John R. Hearn, Garry M. Cox, Des Moines, Iowa, for appellant.

Before LAY, Chief Judge, and BRIGHT and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

Appellant Thomas J. Williams seeks to overturn his conviction for transportation and sale in interstate commerce of stolen goods, in violation of 18 U.S.C. §§ 2314, 2315, and conspiracy to commit these offenses in violation of 18 U.S.C. §§ 2, 371. Williams raises two alleged errors concerning the admission of evidence, challenges three jury instructions given by the district court [1] and claims the evidence was insufficient to support the jury conviction.

## I. FACTUAL BACKGROUND [2]

Williams was convicted on all counts of an eleven-count indictment. In the first five counts the grand jury charged Williams with the knowing transportation of stolen soybean meal in interstate commerce on five different occasions in 1979. The next five counts charged the defendant with the sale of the same soybean meal. The eleventh count alleged that Williams was part of a conspiracy to transport and sell soybean meal in interstate commerce during the period 1975 to and including September 1979.

The government's key witness was Wayne Moorehead, an unindicted co-conspirator in this case. Moorehead, formerly an employee of Cargill, Inc., testified that he cooperated with the defendant to unlawfully procure soybean meal from the Cargill plant in Des Moines, Iowa. At the time of the thefts, Moorehead was the soybean meal loader at the Cargill storage facility.[3]

1. The Honorable William C. Stuart, Chief Judge for the Southern District of Iowa, sentenced the defendant to eight years on each of the first ten counts and five years on count XI, all sentences to run concurrently. The sentences on counts II, IV, VI, VIII, X and XI were suspended and the defendant was placed on probation for five years to commence upon release from confinement. The defendant was also fined a total of $24,000 on these counts.

2. We, of course, view the facts in the light most favorable to the jury verdict. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

3. Moorehead testified in this case under a grant of immunity from the United States Attorney. Moorehead had earlier pled guilty in state court to five felony counts for the theft of the soybean meal.

The scheme devised by Moorehead and Williams was not a complicated one. Williams paid Moorehead in cash at Moorehead's home or at other pre-arranged places. Williams would then drive his truck to the Cargill plant late in the evening near the end of Moorehead's shift. This usually occurred on Mondays and Thursdays. Moorehead would signal to Williams when it was time to back under the spout at the Cargill plant and Moorehead would then simply load the defendant's truck with soybean meal. This was done without any authorization from Cargill and afterwards Moorehead would destroy the records of the loading.

At first, in 1974, the defendant asked Moorehead to put extra meal on his truck when he picked up an authorized load. Eventually, the defendant asked Moorehead to load his entire truck. The operation stopped for a brief period in 1976. Apparently, the defendant's truck was too long to be driven in Iowa. However, the conspiracy to steal the soybean meal was renewed in 1977, and continued until Moorehead's arrest in September 1979.

The government's evidence indicated that Williams would often sell the meal to the Central Nebraska Co-op Company in Gibbon, Nebraska. An employee of the co-op testified that he had a series of transactions with Williams starting in September 1977. The defendant would usually arrive on the morning of a Tuesday or Friday. He also stated that Williams never produced a bill of lading or a weigh ticket to document the source of the meal.

Each load was approximately 50,000 pounds of high protein soybean meal. Williams received varying amounts for delivering the meal, usually somewhere between $3,500 and $5,500.[4] Moorehead at first received $800 to $1,000 for his part of the scheme. Later, Moorehead demanded more money and eventually received $2,000 a load. Moorehead testified that he provided approximately 200 loads to Williams and another truck driver.

Moorehead's testimony was corroborated on a number of points. The government produced telephone records which supported Moorehead's claim that he received calls from Williams, at his home, to arrange the delivery of the meal. The records showed a number of calls from several different locations that were charged to the defendant's home phone and made to Moorehead's residence. Also, video tapes made by Cargill supported Moorehead's testimony on how the meal was stolen. These tapes were reviewed when Cargill management became suspicious about losing meal in September 1979. A review of the tapes demonstrated that on a number of Monday and Thursday nights of July, August and September one more truck was loaded than was reported by the meal loader. The person in charge of the meal loader on those nights was Wayne Moorehead. Further, the time of delivery and the size of the shipments that went to the co-op in Nebraska correlate to the thefts as described by the prosecution's chief witness.

Testimony by James Witt also supported the government's case. He testified that in 1974, he paid the defendant $1,000 in exchange for Moorehead's telephone number in Des Moines. Witt testified that he followed through on the information and picked up a load from Moorehead, apparently as part of the same type of scheme with which the defendant is convicted. Immediately after this testimony was given, the district court cautioned the jury that this evidence was not to be considered as evidence of guilt or innocence regarding the first ten counts of the indictment but that it was only to be used to show a purpose, motive, intent or plan with regard to those charges.

---

4. In each of the five specific instances charged in this case, the defendant received over $5,000 for the soybean meal from the Central Nebraska Co-op. The government produced copies of checks issued to the defendant corresponding to the five transactions charged in the indictment.

## II. ANALYSIS

### A. *Witt's Testimony*

■ The defendant challenges the admission of the Witt testimony. He seemingly concedes that the testimony was permissible under Rule 404(b), Fed.R.Evid., but claims that its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Rule 403, Fed.R.Evid. *See United States v. Headid*, 565 F.2d 1029, 1031 n. 6 (8th Cir. 1977). The defendant primarily asserts that Witt's testimony to events in 1974 is too remote in time from the charges made in the indictment. While it is true that the first ten counts refer to incidents occurring in 1979, the conspiracy charge of count XI is alleged to have begun in late 1974. The defendant responds that Moorehead testified the conspiracy ended in 1976. However, the conspiracy did not end but was only temporarily suspended. The scheme was renewed the following year and continued until Moorehead's arrest in September 1979.

Thus, appellant's argument ignores the facts of this case. The district court carefully cautioned the jury immediately after the testimony was admitted, consistent with the terms of rule 404(b). Any conclusion that the probative value of the evidence was outweighed by prejudice is within the sound discretion of the trial court. It is clear that here there was no abuse of discretion. *United States v. Adcock*, 558 F.2d 397, 402 (8th Cir.), *cert. denied*, 434 U.S. 921, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977). *See United States v. Lowe*, 569 F.2d 1113, 1116 (10th Cir.), *cert. denied*, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978).

### B. *Instructions*

The first ten counts of the indictment charged violations of 18 U.S.C. §§ 2314, 2315. Both sections require that the property involved have a value of $5,000 or more. The defendant claims that the district court improperly instructed on this element of the crime. The questioned instruction, number 15, stated:

> In Counts 1 through 10 the government must establish that the value of the property described therein exceeds $5,000. Value in either case means market value or cost price, whichever is greater. The value of the property is a question of fact to be determined by the jury.

The defendant asserts that this instruction misstates the proper standard. It is uniformly held that the statutory term "value" means market value. *See United States v. Wigerman*, 549 F.2d 1192, 1193 (8th Cir. 1977); *Anderson v. United States*, 406 F.2d 529, 534 (8th Cir. 1969). Williams asserts that instruction number 15 diminished the government's burden of proof by suggesting that the amounts paid for the soybean meal by the Central Nebraska Co-op were dispositive on the jurisdictional amount issue. He states that cost price is only a factor which should be considered when determining market value.

■ Williams' argument is not persuasive. The only evidence on this issue was the amounts paid by the Central Nebraska Co-op, all of which were over $5,000. *See* n.4 *supra*. The appellant does not point to any testimony which rebuts this assertion. In a case where the only evidence concerns the cost price in an exchange between a willing buyer and a willing seller, this evidence, if believed, is dispositive. *See Cave v. United States*, 390 F.2d 58, 67 (8th Cir. 1968), *cert. denied*, 392 U.S. 906, 88 S.Ct. 2059, 20 L.Ed.2d 1365 (1969). In the challenged instruction, the district court expressly instructed the jury that value is a question of fact. Under the circumstances of the instant case the instruction was not error.

■ The appellant complains about two other instructions. First is instruction number 4 which states:

> You will have observed that in the indictment the phrase "on or about" is used with reference to certain dates. It is not necessary that the government prove the

act to have occurred on or within the exact dates. It is necessary in that connection only that the act charged in the indictment be proved to have occurred within a reasonable time of the dates, or over an interval of time including the dates.

Williams asserts that the instruction permitted the jury to decide the case on the basis of unrelated criminal conduct and that it had a high probability of confusing the jury. This point is frivolous. This "on or about" instruction is commonly given in criminal cases. *See* Devitt & Blackmar, Federal Jury Practice and Instructions, § 1305, at 353 (3d ed. 1977). It is not necessary that the government prove the exact date of the charged crime. *United States v. Young*, 618 F.2d 1281, 1289 (8th Cir.), *cert. denied,* 449 U.S. 844, 101 S.Ct. 126, 66 L.Ed.2d 52 (1980).

■ Williams also claims that instruction number 12 invades the province of the jury by assuming the disputed fact of interstate transportation. The instruction states that "[t]he government must establish that the intent to deprive the owner of the rights and benefits of ownership was formed before the meal was transported from Iowa to Nebraska or Colorado." The government responds, and we agree, that this instruction merely clarified the elements of the crime. Although it may have been preferable to note in the instruction that it was only alleged that the interstate transportation occurred, it was not error to fail to do so. Reading the instructions as a whole, it was clearly stated to the jury that each element of the crime, including interstate transportation, must be proved beyond a reasonable doubt.

### C. *Other Issues*

■ Williams asserts that there was insufficient evidence to support the jury verdict. Our earlier recitation of the facts, however, clearly demonstrates that a jury question was generated on each of the counts of the indictment. Moorehead's tes-

timony was credible and was substantially corroborated by other sources. The appellant primarily argues that there was no evidence that the meal transported by the defendant and sold to the Central Nebraska Co-op was the same goods stolen from the Cargill plant in Des Moines. Under Moorehead's testimony and the corresponding times of delivery to the Central Nebraska Co-op, the jury could very well draw the inference that the loads in question were actually received from Cargill. In sum, the evidence was ample to demonstrate an ongoing plan to transport and sell the stolen soybean meal.

■ Finally, the appellant argues that exhibit 8, a diagram illustrating the process for loading soybean meal at the Cargill plant, was improperly admitted because it lacked proper foundation. Williams also claims that the court unduly emphasized the chart by allowing the jury to use it during its deliberations. A Cargill employee testified at trial regarding his familiarity with the operation at the plant and the accuracy of the exhibit. Thus, the foundation was sufficient. The question whether to allow the jury to use the exhibit during its deliberations was obviously within the district court's discretion. Nothing indicates that the defendant was prejudiced in any way.

We are satisfied that the defendant received a fair trial and the evidence of guilt was overwhelming.

Affirmed.