UNITED STATES of America, Appellee,

v.

**Wayne MORRIS, Defendant, Appellant.**

UNITED STATES of America, Appellee,

v.

**Carl GRAHAM, Defendant, Appellant.**

Nos. 82–1372, 82–1409.

United States Court of Appeals,
First Circuit.

Argued Dec. 6, 1982.

Decided Feb. 24, 1983.

Certiorari Denied May 23, 1983.
See 103 S.Ct. 2128.

428

Thomas A. Tarro III, Providence, R.I., with whom Rodio, Tarro & Ursillo, Ltd., Providence, R.I., was on brief, for appellant Wayne Morris.

Robert B. Mann, Providence, R.I., with whom Mann & Roney, Providence, R.I., was on brief, for appellant Carl Graham.

James E. O'Neil, Asst. U.S. Atty., Providence, R.I., with whom Lincoln C. Almond, U.S. Atty., Providence, R.I., was on brief, for appellee.

Before CAMPBELL and BREYER, Circuit Judges, and SMITH,* Senior District Judge.

LEVIN H. CAMPBELL, Circuit Judge.

Appellants Wayne Morris and Carl Graham were convicted in the district court of multiple counts of transporting minors across state lines for purposes of prostitution and one count of conspiring to do so. *See* 18 U.S.C. § 2423(a)(1); *id.* § 371. Graham was also convicted of a single count of transporting an adult across state lines for purposes of prostitution. *See id.* § 2421. The government's primary evidence was the testimony of five females. Each described meeting the defendants in Providence, Rhode Island, travelling with them, usually in Graham's car, to New Jersey and Massachusetts, and working there for one or the other as a prostitute.

We find no merit in appellants' claims of error.

* Of the District of Montana, sitting by designation.

## I.  VARIANCE

■ Appellants contend their convictions on the first four counts were obtained without due process because of variances between the dates given in the indictment, those mentioned in the bill of particulars, and those proved at trial. The first count charged both defendants with conspiracy "between on or about January 1980 and continuing to on or about May 1981."[1] Counts two through four charged both defendants with transporting minors from Rhode Island to Boston in January 1980, to Fall River, Massachusetts, in February 1980, and to Newark during the summer of 1980, respectively.

In a later bill of particulars, the U.S. Attorney repeated the allegation of interstate transportation "between the dates of January 1980 and May 1981," specifying that "it is anticipated that evidence will be offered concerning the dates of January 27, 1980; September 2, 1980; and September 19, 1980." He added, however, that "[b]y providing the above dates the government in no way intends to limit itself to those dates at the time of trial in offering proof supportive of the alleged offenses."

While the female witnesses testified to numerous acts of transportation and prostitution within the period January 1980 to May 1981, they were vague as to exact dates—one was uncertain even as to what year she had worked for the defendant; the others testified in terms of months or seasons. Their testimony indicated that both defendants had transported minors to Boston in the fall or winter (rather than in January) of 1980. Travel to Fall River appears to have occurred late in 1980 rather than in February 1980. And while the testimony indicated there were trips to New Jersey in 1980, as alleged, much of the

activity there seems to have occurred early in 1981. Hotel records put in evidence by the government related to late 1980 and early 1981. Finally, a police officer testified to observing certain of the witnesses and the defendants in Fall River in November 1980. Thus the government's proof did not correspond exactly with the dates alleged in the substantive counts nor with the three specific dates given in the bill of particulars. All conduct occurred, however, within the 16 months from January 1980 to May 1981 during which the conspiracy and transportation were alleged to have taken place.[2] The conduct, moreover, was of a continuing nature, occurring, it was testified, over substantial periods within the 16 month time frame.

■ We find no denial of due process. Where a particular date is not a substantive element of the crime charged, strict chronological specificity or accuracy is not required. This court has accepted both generality in the dates alleged in the indictment, e.g., United States v. Nunez, 668 F.2d 10 (1st Cir.1980) ("on or about 1977"), and variance between what is alleged and what proved, e.g., United States v. Antonelli, 439 F.2d 1068 (1st Cir.1971). A commentator states, "proof of any date before the return of the indictment and within the statute of limitations is sufficient." 1 C. Wright, Federal Practice & Procedure: Criminal § 125 at 383 (1982). See also United States v. Nunez, 668 F.2d 1116, 1127 (10th Cir.1981) ("since time is not an essential element of the offense charged, any variance in the evidence from the date alleged in the indictment as to the time of possession may be disregarded"). While the cases appellants cite contain general language indicating that a conviction may be set aside because of such imprecision, none in fact does so.[3]

---

1. Five overt acts were alleged. The first was that Morris introduced a female minor to Graham. The others all involved interstate transportation of minors. The overt acts were said to have occurred in January 1980, between January and March of 1980, in February 1980, during the spring and summer of 1980, and during the spring and summer of 1981. Overt acts two through five correspond to counts two through five of the indictment; thus the variance argument applies equally to the substantive and the conspiracy allegations.

2. There was testimony concerning events in New Jersey after May 1981. However, this involved Graham only and was relevant to counts five and six. Graham does not claim a fatal variance as to these counts. A Boston

police officer also testified to arresting one of the witnesses for prostitution in June of 1981.

3. Dunn v. United States, 442 U.S. 100, 99 S.Ct. 2190, 60 L.Ed.2d 743 (1979), does not help appellants. The Court there reversed because the Tenth Circuit had convicted on a charge that was neither in the indictment nor presented to the jury, not because of a mere variance. That is a far cry from this case, where the indictment and proof were entirely consistent as to what happened, the only confusion being as to when.

For similar reasons, United States v. Parrilla Bonilla, 648 F.2d 1373 (1st Cir.1981), also relied on by appellants, is inapposite. There we refused to uphold a conviction on a ground not

In this case, the date is not an element of the crime charged, nor is there any indication that the offenses occurred after return of the indictment or outside the period of limitations. The critical inquiry is therefore not whether there was a variance, but whether the defendants were prejudiced thereby. *United States v. Hall,* 632 F.2d 500, 504 (5th Cir.1980); *United States v. Wright,* 573 F.2d 681, 685 (1st Cir.), *cert. denied,* 436 U.S. 949, 98 S.Ct. 2857, 56 L.Ed.2d 792 (1978); *United States v. Joyner,* 539 F.2d 1162, 1164 (8th Cir.), *cert. denied,* 429 U.S. 983, 97 S.Ct. 499, 50 L.Ed.2d 593 (1976); *United States v. Austin,* 448 F.2d 399, 401 (9th Cir.1971); *United States v. Antonelli,* 439 F.2d 1068, 1070 (1st Cir.1971); *United States v. Haskins,* 345 F.2d 111, 114 (6th Cir.1965) (bill of particulars). *See* Fed.R.Crim.P. 52(a) ("Any error, defect, irregularity or *variance* which does not affect substantial rights shall be disregarded.") (emphasis added).[4] We find no prejudice. The defendants knew they were charged with transportation between Providence, Rhode Island, and Boston, Fall River, and Newark during the period January 1980 until May 1981. The bill of particulars warned that the government did "intend to introduce into evidence testimony concerning those general time periods covering the months of January 1980 through May 1981."[5]

While defendants assert that they were unable to prepare a defense, they fail to say how this was so. No facts are referred to indicating how the variances occasioned surprise, precluded any defenses, or undermined cross-examination. Essentially no evidence was presented by the defense, and there is no hint that this absence of evidence resulted from defendants' having prepared a defense to charges of transportation on different dates than surfaced at

trial. Defendants never sought a continuance. Nor did they object to the general course of the testimony, but only, late in the trial, to the prosecution's introduction of the hotel records. Defense counsel were provided with a list of the government's witnesses, some of the hotel records, and other materials; they thus had access to most of the prosecution's case. Finally, the judge allowed defendants every afternoon off to work on the case. Support for their claim of prejudice is thus speculative at best, *see United States v. Celaya-Garcia,* 583 F.2d 210, 211 & n. 3 (5th Cir.1978), *cert. denied,* 440 U.S. 926, 99 S.Ct. 1259, 59 L.Ed.2d 481 (1979), if not simply nonexistent.

Appellants assert that the court improperly usurped the jury's function by instructing it that the variances were reasonable as a matter of law. They point to the usual jury instruction that the prosecution need not prove the exact date of an offense, but only that it was committed reasonably close to the date in the indictment. *E.g., United States v. Williams,* 657 F.2d 199 (8th Cir. 1981); *Tafoya v. United States,* 386 F.2d 537 (10th Cir.1967), *cert. denied,* 390 U.S. 1034, 88 S.Ct. 1433, 20 L.Ed.2d 294 (1968). *See* Mathes, *Jury Instructions for Federal Criminal Cases,* 27 F.R.D. 39, 88 (1960).[6] We do not take that instruction, however, as an indication that the reasonableness of a variance is normally a question of fact for the jury. Were this so, the jury's verdict of guilty would foreclose the court from later finding a prejudicial variance. In this circuit, as elsewhere, the court decides whether the variance is acceptable as a matter of law. *See United States v. Antonelli,* 439 F.2d 1068; *cf. United States v. Nunez,* 668 F.2d 10. A jury can seldom have access to all the facts necessary to judge whether a variance prejudiced a defendant in the

---

presented to the district court. No such question is presented here.

**4.** A variance may be prejudicial if it leaves the defendant unprotected against another prosecution for the same offense. *E.g., United States v. Hall,* 632 F.2d 500, 504 (5th Cir.1980); *United States v. Schoenhut,* 576 F.2d 1010, 1021–22 (3d Cir.), *cert. denied,* 439 U.S. 964, 99 S.Ct. 450, 58 L.Ed.2d 421 (1978). We see no such danger here.

**5.** This might suggest that any problem here would be one of generality rather than variance. To the extent that is the issue, we find the allegations were not impermissibly general.

*See United States v. Nunez,* 668 F.2d 10 (1st Cir.1980); 1 C. Wright, *Federal Practice & Procedure: Criminal* § 125 at 381–82 (1982).

**6.** The instruction given in *Williams* read:

You will have observed that in the indictment the phrase "on or about" is used with reference to certain dates. It is not necessary that the government prove the act to have occurred on or within the exact dates. It is necessary in that connection only that the act charged in the indictment be proved to have occurred within a reasonable time of the dates, or over an interval of time including the dates.

657 F.2d at 202–03.

preparation of his defense, nor are laymen well suited to that inquiry. We think the standard instruction is meant not to put the reasonableness of the variance to the jury, as an element of proof, but merely to make clear that the government need not prove occurrence of the particular crime on the precise date charged.

The government's difficulty with dates, while understandable given the witnesses and the nature of the charges, was in some respects extreme. However, defendants were well aware of the overall chronological parameters of the government's proof and of the general shape of the case against them. They have failed to demonstrate prejudice. The variances were therefore acceptable, and the district judge was correct in so instructing the jury. We see no reason to overturn the convictions on this ground.

## II. EVIDENTIARY CHALLENGES

### A. Evidence of Other Wrongs

■ At trial, one witness testified that Graham had on different occasions broken into her apartment, abducted her, and beaten her. Hospital records and the testimony of the witness's mother corroborated her story. Graham objected to the admission of this evidence at trial, and now contends that it was improper propensity evidence, introduced only to show bad character.

Fed.R.Evid. 404(b) allows admission of evidence of wrongful conduct for purposes other than to prove bad character, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."[7] Thus, the evidence may be admitted if it has some "special" probative value. *United States v. Moccia,* 681 F.2d 61, 63 (1st Cir.1982). The special probative value of this evidence is that identified in *United States v. Wright,* 573 F.2d 681 (1st Cir.), *cert. denied,* 436 U.S. 949, 98 S.Ct. 2857, 56 L.Ed.2d 792 (1978), another Mann Act prosecution. There we upheld the admission of evidence of a beating that had occurred several months after the alleged interstate transportation, reasoning that "the beating and threats were probative of the relationship between appellant and the witness and of appellant's control over the witness. These showings were

relevant to the desired inference that appellant could cause the witness to be transported." *Id.* at 683. The same is true here. The abduction and beating support an inference that Graham was able to, and might well have, transported the witness. In addition, the witness's testimony was that Graham had beaten her for "stashing" money, that is, not turning over all of her earnings to him. This is highly probative of the nature of their relationship and the purpose behind any interstate transportation.

The fact that this evidence does have "special" probative value does not assure its admissibility; the district judge must also balance its probative value against possible prejudice. *United States v. Moccia,* 681 F.2d at 63. This is a responsibility committed to the judge's broad discretion. *United States v. Eatherton,* 519 F.2d 603, 611 (1st Cir.), *cert. denied,* 423 U.S. 987, 96 S.Ct. 396, 46 L.Ed.2d 304 (1975); 2 *Weinstein's Evidence* ¶ 404[18] at 404–110 & n. 16 (1981). Given the relevance and significance of the evidence to the government's case, the district court was entitled to conclude that its probative value exceeded its possible prejudice.

### B. Defendant Graham's own Statement

■ Graham also contends that the district court should have suppressed his own statement, made during booking in response to a question as to his occupation, that he was a "pimp and gambler." He makes separate challenges under the fifth amendment, the sixth amendment, and Federal Rule of Evidence 403. We need not untangle these complex arguments because we believe that any error in admitting the statement was harmless beyond a reasonable doubt. *See Booton v. Hanauer,* 541 F.2d 296, 299 (1st Cir.1976). That women worked for Graham as prostitutes was overwhelmingly clear from the other testimony. Graham's own statement to that effect was inconsequential and merely cumulative. *See United States v. Ferreboeuf,* 632 F.2d 832, 834 (9th Cir.1980), *cert. denied,* 450 U.S. 934, 101 S.Ct. 1398, 67 L.Ed.2d 368 (1981). The additional prejudice, if any, from Graham's identification of himself as a gambler was insignificant.

7. Graham contends that this evidence falls within none of the stated exceptions. This may be true—though arguably it relates to Graham's plan to prostitute the witness—but the list of exceptions, by its own terms, is not exclusive.

## III. DEFENDANTS' MOTIONS FOR ACQUITTAL AND A NEW TRIAL

### A. Variance

As to counts two and three, appellant Graham resurrects his variance claim in the context of his motions for acquittal. His argument is simple: there was no evidence showing that he transported a minor to Boston in January of 1980 or to Fall River in February of 1980, as charged in the indictment. As our discussion in Part I should make clear, this contention is frivolous. There was ample evidence that he transported minors to both locations in the 16-month period which includes those two months; the disparity between the dates charged and those proved is immaterial.

### B. Insufficient Evidence

■ Graham asserts that the insufficiency of the evidence as to counts one, two, four, and seven required that he be granted a new trial. We must affirm the district court's denial of a motion for new trial based on insufficiency of the evidence "unless the evidence, viewed in the light most favorable to the government, could not have persuaded any rational trier of fact that [Graham] was guilty beyond a reasonable doubt." *United States v. Cincotta,* 689 F.2d 238, 241 (1st Cir.1982). The evidence here was more than sufficient to support the jury's verdict.

There was specific and adequate testimony as to each of the substantive counts. As to the charge of conspiracy, while each girl worked exclusively for one defendant or the other, the jury could have inferred from the evidence of close cooperation between Graham and Morris that they were in league together. The testimony indicated that the two usually transported the girls together in Graham's car; they introduced girls to each other; they waited together while the girls were on the streets and stayed together, with the girls, in hotels; and when one girl fled from Graham, it was Morris who found her and brought her back to him. This "development and collocation of circumstances" was sufficient to support a finding of agreement. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

### C. Standard for Ruling on the Motion for a New Trial

■ Both appellants challenge the district judge's denial of their motions for a new trial on a further ground. Pointing out that in denying these motions the judge referred back to his denials of their motions for acquittal, they contend that he mistakenly applied the same standard in considering both motions.[8]

Appellants misread the court's order. While Graham's motion for a new trial alleged eight errors and Morris's seven, the memoranda in support thereof discussed only the variance issue. It was solely in response to this legal argument that the district judge referred to his earlier rulings, noting that the argument had been "previously raised and rejected" and that "the Court stands by its previous rulings." Weighing the evidence and considerations of credibility have little to do with the variance issue. Thus, appellants' argument about the different standards is inapposite.

We assume that the district court considered and rejected defendants' other, unargued, assertions of error, most of which have been repeated before us. There is no indication that it applied an improper standard or abused its discretion in denying a new trial. *See United States v. Wright,* 625 F.2d 1017, 1019 (1st Cir.1980).

## IV. MORRIS'S MOTION FOR A MISTRIAL

■ Morris's first witness was a police officer who had interviewed one of the government's witnesses, Charlene P. After cross-examination was interrupted for a lengthy sidebar conference with respect to the proper scope of questioning, the prosecutor asked the witness if Charlene had told him that Morris had beaten her. Defense counsel immediately objected, and moved for a mistrial. The objection was sustained, and any answer given (the record reveals none) was stricken; the motion for a mistrial was denied.

A motion for a mistrial is directed to the sound discretion of the district court. *United States v. Sclamo,* 578 F.2d 888, 891 (1st Cir.1978). Morris argues that the court abused its discretion in denying the motion

---

**8.** In ruling on a motion for acquittal, the court is to consider the evidence in the light most favorable to, and make all inferences in favor of, the government. *United States v. Fortes,* 619 F.2d 108, 122 (1st Cir.1980). In contrast, in ruling on a motion for a new trial the court is freer to weigh the evidence and consider credibility. *United States v. Indelicato,* 611 F.2d 376, 387 (1st Cir.1979). A judge could thus deny a motion for acquittal but allow the same defendant's motion for a new trial.

because the question was designed to, and did, prejudice the jury, destroying the fairness of the trial. However, the line of questioning was halted as soon as it began. This was a single unanswered question, asked during a five-day trial, and the response to which might well have been admissible but for hearsay problems.[9] Most importantly, Charlene herself had already testified, without objection, that Morris had "smacked me around." In these circumstances, the district court did not abuse its discretion in denying a mistrial. *See United States v. Pappas,* 611 F.2d 399, 406 (1st Cir.1979).

## V.  JURY INSTRUCTIONS

Finally, the appellants renew their objection, timely made at trial, to the court's refusal to give two requested instructions on conspiracy.[10] Defendants had asked the court to instruct the jury (1) that there can be no conviction for guilt by association, and (2) that the degree of criminal intent necessary to support a conviction for conspiracy is no less than that required for the substantive offense. They assert that these instructions were necessary to their theory of defense, *viz.,* that Morris and Graham were merely acquaintances.

The refusal to give a particular instruction is unobjectionable if the charge given adequately covers the theory of defense. *United States v. Skinner,* 667 F.2d 1306, 1310 (9th Cir.1982). The court need not give instructions in the form and language requested by the defendant. *United States v. Winter,* 663 F.2d 1120, 1146 (1st Cir.1981), *petition for cert. filed,* —— U.S. ——, 103 S.Ct. 1250, 75 L.Ed.2d 479 (1983). Here, the court stressed to the jury that the government had to prove beyond a reasonable doubt that the defendants had entered into an agreement and that each "was fully a member of the conspiracy"; it was "sufficient to show that they tacitly came to a mutual understanding to accomplish any of the unlawful acts as charged." These instructions, in particular the repeated emphasis on the necessity of an agreement, were adequate to guard against a conviction based on guilt by association. Defendants were in no way prevented from making this argument to the jury. *See United States v. Capone,* 683 F.2d 582, 588 (1st Cir.1982). The Ninth Circuit recently rejected a similar challenge to almost the identical instruction. *See United States v. Kenny,* 645 F.2d 1323, 1337 (9th Cir.), *cert. denied,* 452 U.S. 920, 101 S.Ct. 3059, 69 L.Ed.2d 425 (1981).

Appellants' argument as to the intent instruction is difficult to distinguish from their argument about guilt by association. Graham contends that the failure to give the instruction was reversible error in light of the court's instructions that a defendant can be convicted "even though he plays a minor part in the conspiracy." However, to the extent a balancing instruction might have been required, the court's statement that each defendant had to be "fully a member of the conspiracy" served that purpose. In any event, the jury was adequately instructed on the issue of intent. The judge stated that the government must prove that each defendant was "aware of the common purposes and was a willing participant with the intent to advance the purpose of the conspiracy." This clearly sets out the intent requirement for the crime of conspiracy. *See* W. LaFave & A. Scott, *Criminal Law* 464–65 (1972); *see also United States v. Previte,* 648 F.2d 73, 81–82 (1st Cir.1981).

Viewed as a whole, *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400–01, 38 L.Ed.2d 368 (1973); *United States v. Harrigan,* 586 F.2d 860, 863 (1st Cir.1978), the court's instructions on conspiracy were adequate. We find no reversible error.

*Affirmed.*

---

**9.** Similar—although nonhearsay—evidence was properly admitted as to Graham. *See* Part IIA, *supra.* With respect to this witness the judge had allowed hearsay to rebut the witness's previous hearsay elicited by defense counsel, but drew the line when the prosecution sought to open up this previously unexplored aspect of the interview with Charlene.

**10.** Morris also renews his objection to the court's instruction on variance. This argument was fully considered and rejected above. *See* Part I, *supra.*