**UNITED STATES of America, Appellee,**

v.

**Peter PAPPAS, Defendant, Appellant.**

**No. 78–1569.**

United States Court of Appeals,
First Circuit.

Argued Sept. 5, 1979.

Decided Dec. 19, 1979.

---

Richard K. Donahue, Lowell, Mass., with whom Donahue & Donahue, Lowell, Mass., was on brief, for defendant, appellant.

Kevin J. O'Dea, Asst. U. S. Atty., Boston, Mass, with whom Edward F. Harrington, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, KUNZIG, Judge, U. S. Court of Claims,\* and CAMPBELL, Circuit Judge.

KUNZIG, Judge.

Peter Pappas, an employee of the Massachusetts Division of Employment Security, appeals from his conviction on all counts of a 21-count indictment charging his involvement in a scheme to defraud the Federal government through misuse of funds intended for programs funded under the Comprehensive Employment and Training Act (CETA).

Appellant Pappas challenges his conviction on three fronts: (1) that the District Court erred in denying his motion for judgment of acquittal at the close of the Government's case; (2) that the court below erred in admitting into evidence (as an exception to the hearsay evidence rule) testimony of an alleged co-conspirator damaging to Pappas; and (3) that the District Court improperly denied his motion for mistrial based on improper remarks made in the jury's presence by the prosecution.

After carefully reviewing all of Pappas' arguments, we can find no error in the proceedings below and accordingly affirm the judgment of the District Court.

\* Sitting by designation.

1. Pappas was charged with violating 18 U.S.C. §§ 371, 665(a), 1001 and 2. The relevant portions of each are set out below.
   18 U.S.C. § 371 makes it a criminal offense when:
   ". . . two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or *any agency thereof in any manner or for any purpose*, and one or more of such persons do any act to effect the object of the conspiracy."
   18 U.S.C. § 665(a) makes criminally liable anyone who:
   ". . . being an officer, director, agent, or employee of, or connected in any capacity with, any agency receiving financial assistance under the Comprehensive Employment and Training Act of 1973 embezzles, willfully misapplies, steals, or obtains by fraud any of the moneys, funds, assets, or property which are the subject of a grant or contract of assistance . . . .."
   18 U.S.C. § 1001 provides as follows:

## I. *The Facts*

On August 4, 1978, Pappas and two co-defendants, Armand Archambault and Ann Gemmelaro, were named by a Federal grand jury in Boston in a 21-count indictment. The indictment charged each with participating in a conspiracy to misappropriate funds intended for CETA training and employment programs.[1] After a week-long trial before a jury, guilty verdicts were returned on all counts against Pappas and Archambault. Gemmelaro was acquitted. Pappas was later sentenced to one year in prison (execution of which was suspended), two years probation, and a fine of $1,000.

Pappas was a job developer for the Massachusetts Department of Employment Security at its Lowell office. Archambault was the owner of Lowell Window Shade, Inc., and until January 1976 the co-owner of Pelletier Home Decorators of Salem, Massachusetts. Gemmelaro was a secretary, clerk and bookkeeper for Pelletier and Lowell Window Shade. The involvement of Pappas, Archambault and Gemmelaro in the CETA employment of three individuals at Lowell Window Shade and Pelletier Home Decorators led to their indictment.

Under the CETA program, Federal funds were provided by the U.S. Department of Labor to the City of Lowell, Massachusetts,

"Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."
18 U.S.C. § 2 is as follows:
"(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal. (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

CETA Consortium. The Consortium was to administer CETA programs in the area. As part of the administration, funds were in turn given to the Massachusetts Division of Employment Security to develop jobs for residents of Lowell and the surrounding area.

The particular individuals whose employment led to Pappas' indictment were Raymond Labbe, employed with CETA assistance at Pelletier Home Decorators; Roger Houle, employed at Lowell Window Shade; and Henry Suprenant, also at Lowell Window Shade. At trial, the evidence related largely to Pappas' role in getting each man on the CETA rolls and his subsequent activities in seeing that their respective companies were reimbursed for the "employment" of each with CETA funds. The evidence concerned Pappas' alleged falsification of documents relating to employment of the three, his false certifications of the work they did and the training they received, and his conspiracy with Archambault and Gemmelaro to effect such falsification and then cover it up.

While with Pelletier Home Decorators from April to the middle of November 1975, Raymond Labbe worked as an installer of awnings. Normand Houle, who in early 1976 bought out co-defendant Archambault's interest in Pelletier, testified at trial that in early 1975, while Labbe was laid off from his job due to a lack of work in the winter, Archambault proposed bringing Labbe back to work with the aid of CETA funds. Labbe testified at trial that he never filled out a CETA application and was never aware of being involved in the program. Nonetheless, "CD-12" forms, which were required to be submitted monthly to certify that work was being performed, were filed on Labbe's behalf. The forms purported to show that Labbe worked at Pelletier receiving on-the-job training. Subsequently, reimbursement payments with CETA funds were made to Pelletier by the Division of Employment Security. Pappas conceded that it was his responsibility to cause preparation of records such as the CD-12 forms certifying Labbe's employment at Pelletier.

Roger Houle, the brother of Normand Houle (part owner of Pelletier) began working at Pelletier on a regular basis as early as February 1976 but was not on the payroll until August of that year. Roger Houle testified that at the suggestion of Archambault he went to see Pappas. The "client intake form" that resulted from Houle's meeting with Pappas stated that Houle was "unemployed," though Houle testified that he told Pappas otherwise during his interview at the DES office. According to Houle, Pappas told him at that time that he would be working for Lowell Window Shade but loaned out to Pelletier.

Subsequent to that meeting, two CD-12 forms were submitted for Roger Houle, both of which were approved by Pappas. Each certified that Roger Houle was employed by and was receiving on-the-job training at Lowell Window Shade, even though Houle himself testified that he did nothing for that company. Nonetheless, Lowell Window Shade was reimbursed for Houle's employment with CETA funds. At trial, Roger Houle testified that Archambault talked with him and asked him to respond to any inquiries by saying that he had been working at Lowell Window Shade. Houle also testified that Archambault asked him to file an amended tax return showing that he had income from Lowell Window Shade. Houle added that Pappas and Archambault together visited him at Pelletier and told him to tell all who inquired that he was indeed in the CETA program. He further stated that Pappas told him to say he had filled out an application at the CETA office with a girl asking him appropriate questions.

Henry Suprenant is the third CETA employee whose employment led to Pappas' conviction. Suprenant began at Lowell Window Shade in April 1975 as a salesman. Again at Archambault's suggestion, Suprenant went to the CETA office to speak with Pappas about the possibility of participating in an employee training program.

Introduced at trial was Suprenant's "Applicant Information Record," which con-

tained information discussed at Suprenant's interview with Pappas. That form contained erroneous information, including a South Lowell address for Suprenant, who lived in Wilmington, Massachusetts.[2] Listing the proper Wilmington address would have made Suprenant ineligible to participate in programs funded by the Lowell CETA Consortium. Testimony tended to show that it was Pappas' responsibility to compile the form.

## II. *Denial of Motion for Acquittal*

■ Pappas first challenges his conviction on the ground that his motion for judgment of acquittal, made at the close of the Government's case, was improperly denied. When failure to grant a motion for acquittal is urged as error on appeal, the sufficiency of evidence against the appellant becomes a matter of law for us to consider. *McDonough v. United States,* 248 F.2d 725 (8th Cir. 1957). Accordingly, we must summarize and measure the relevant evidence presented against Pappas.

■ "In reviewing the denial of a motion for judgment of acquittal, the pertinent question is whether the trial court had reason to believe that there was sufficient evidence on which reasonable persons could find guilt beyond a reasonable doubt." *United States v. Leach,* 427 F.2d 1107, 1111 (1st Cir. 1970), *cert. denied,* 400 U.S. 829, 91 S.Ct. 57, 27 L.Ed.2d 59 (1970). As we assess the sufficiency of the evidence, the court must examine it as a whole and draw all legitimate inferences therefrom in the light most favorable to the Government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Gabriner,* 571 F.2d 48, 50 (1st Cir. 1978). After examining the evidence with the appropriate standard in mind, we are led to conclude that there is indeed sufficient evidence to uphold Pappas' conviction.

Count One of Pappas' indictment charged him with conspiracy in violation of 18 U.S.C. § 371 (1976), the general conspiracy statute.

The evidence indicating his participation in a conspiracy is plentiful. There was evidence that Pappas had overall responsibility for the CETA contracts of Houle, Suprenant, and Labbe. He personally prepared the applications of Houle and Suprenant, and those applications contained false information which, if truly stated, would have made them ineligible. He was also repeatedly responsible for approving documents with false information, particularly the CD-12 forms certifying tht Houle and Labbe had performed on-the-job training. Further, there was testimony that Pappas and Archambault together urged Houle and Labbe to state falsely to investigators that they had been in the CETA program and were checked periodically by Pappas. As part of the conspiracy, Archambault urged Houle to file a tax return reflecting income from Lowell Window Shade, though Houle testified at trial he never worked there or received training there.[3]

We believe that the evidence of this activity on Pappas' part was basis enough from which a reasonable person could find Pappas involved in a scheme to defraud the Government.

In addition to conspiracy charges under 18 U.S.C. § 371, Pappas was charged under three other statutes, 18 U.S.C. §§ 2, 1001, and 665(a).[4] Generally, these statutes proscribe making false statements to the Government, prohibit theft or embezzlement of funds under CETA or the inducement of such theft, and make those who aid in or cause such acts to be done punishable as principals. Without restating in detail all of the evidence here, it is sufficient to review the highlights and the cumulative

---

2. Suprenant testified he told Pappas he lived in Wilmington. He also testified that the form included other incorrect information, some of which Suprenant said was contrary to what he told Pappas and some of which he did not recall discussing.

3. Though there was no evidence that Pappas himself urged Houle to file a misleading tax return, this is nonetheless an act in furtherance of the conspiracy for which Pappas can be held responsible. *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946).

4. *See* note 1, *supra.*

effect of the evidence against Pappas relating to his involvement in the hiring, of Labbe, Houle and Suprenant.

With regard to Labbe, there was testimony that he never went to the CETA office and filled out an application. Nonetheless, Pappas had overall responsibility for supervising his CETA employment. The application filed for Labbe (presumably filed by Archambault) contained false information relating to Labbe's residence and veteran status which, if truly represented, would have made him ineligible for the program. Despite this, Pappas on eight occasions certified his employment with CD-12 forms. In addition, there was testimony that Pappas approached Labbe after a federal investigation had begun and told Labbe to state falsely that he had been in a proper on-the-job training program and had been supervised periodically by Pappas.

With regard to Roger Houle, there was testimony from Houle that at his personal interview with Pappas he told Pappas he was employed, yet the resulting client intake form, executed by Pappas, states otherwise. Forms approved by Pappas which stated that Houle worked at Lowell Window Shade were introduced, though Houle testified that he, too, was approached by Pappas and instructed to tell any inquirer that he was working properly under CETA.

With regard to Henry Suprenant, evidence again tended to show that Suprenant was interviewed personally by Pappas at the suggestion of Archambault. Suprenant testified that he provided Pappas with his correct address in Wilmington, Massachusetts. The form, however, states that Suprenant lived in Lowell, a fact that if truthfully stated would have made Suprenant ineligible.

We think that under all the circumstances the jury could have reasonably established Pappas' active and willing participation with Archambault to effect this CETA fraud. Pappas argues that he is guilty at most of mere negligence or carelessness in his job, and contends that such carelessness does not establish his dishonesty. *Reiss v. United States*, 324 F.2d 680 (1st Cir. 1963).

The question, however, is not whether the facts are consistent with mere negligence but whether a jury could reasonably find that they indicated dishonesty beyond a reasonable doubt. The position of official responsibility held by Pappas and his presumed familiarity with legal requirements, the repeated approval of forms with false information by Pappas for Labbe, Pappas' responsibility for filling out the initial Labbe application which (the jury could believe) Labbe never tendered, Pappas' knowledge and falsification of Houle's employment status, Pappas' instruction to Houle and Labbe as to what to tell any person making inquiry, and Pappas' knowledge and falsification of Suprenant's residential address add up to evidence which a reasonable mind might accept as adequate to support a conclusion of guilt beyond a reasonable doubt. The district judge correctly denied the motion for judgment of acquittal.

### III. *Admission of Statements by Co-conspirator*

■ Federal Rule of Evidence 801(d)(2)(E) makes admissible as an exception to the rule against hearsay evidence statements made by co-conspirators. Prior to the admission of any such evidence, however, a determination must be made as to the existence of a conspiracy and the defendant's membership therein. *United States v. Martorano*, 557 F.2d 1 (1st Cir. 1977), *cert. denied*, 435 U.S. 922, 98 S.Ct. 1484, 55 L.Ed.2d 515 (1978). After presenting its evidence in the instant case, the Government moved, pursuant to *United States v. Petrozziello*, 548 F.2d 20 (1st Cir. 1977), that statements previously introduced and properly limited by the Court to their respective defendants be introduced against the other co-defendants as part of the conspiracy charged in Count One of the indictment. The court found that it was satisfied by the evidence that the Government had made a *prima facie* showing of a conspiracy and allowed statements by Archambault to be introduced against Pappas.

In *Petrozziello, supra*, this circuit announced a new test to be applied by district

courts when making the preliminary finding of a conspiracy, prerequisite to introduction of statements by alleged co-conspirators against one another. Before *Petrozziello*, we followed the general rule that the court should provisionally admit hearsay statements against a defendant if it found enough independent, nonhearsay evidence to make a *prima facie* case of conspiracy. *United States v. Johnson*, 467 F.2d 804 (1st Cir. 1972), *cert. denied*, 410 U.S. 909, 93 S.Ct. 963, 35 L.Ed.2d 270 (1973); under this approach, the statements were admitted subject to the jury's ultimate determination as to admissibility, and the judge was required to give the jury timely (if perhaps unrealistic) instructions concerning its responsibilities on the matter of admissibility. *See, e. g. United States v. Honneus*, 508 F.2d 566; 677 (1st Cir. 1974), *cert. denied*, 421 U.S. 948, 95 S.Ct. 1677, 44 L.Ed.2d 101 (1975). In *Petrozziello*, decided after the adoption of the new Federal Rules of Evidence, we held that the *prima facie* standard was "no longer appropriate." 548 F.2d at 23. Instead, as the ultimate question of admissibility now rests with the court alone, the court was to apply a "more likely than not" standard—if it is more likely than not that the declarant and the defendants were members of a conspiracy when the hearsay statement was made, and that the statement was in furtherance of the conspiracy, the statement is admissible. *Id.*

Pappas argues that the district judge's articulation of the *prima facie* standard constitutes reversible error. Moreover, he argues that had the correct "more likely than not" standard been used, a finding that a conspiracy existed could not be made, since none of the Government's evidence showed the degree of knowledge on Pappas' part sufficient to meet the "more likely than not" test.

The Government answers that Pappas' counsel failed to object to the judge's ruling at trial. Without the benefit of objection by trial counsel, our review is limited to mistakes constituting plain error.[5] While appellant has attempted to persuade us that this error falls within the bounds of the plain error rule in Fed.R. Crim.P. 52(b), we are not convinced. The judge acted pursuant to a motion expressly based on *Petrozziello* and it is possible—indeed in these circumstances it seems likely—that his articulation of an incorrect standard was a slip of the tongue which would have been quickly rectified had the error been brought to his attention. *See* Fed.R.Crim.P. 51. There was more than sufficient evidence to justify a ruling under the proper *Petrozziello* standard, 548 F.2d at 23, that the declarant Archambault and the defendant Pappas were members of the conspiracy and that the statements were made in furtherance thereof. Thus, the district judge could well have applied the *Petrozziello* standard and admitted under the Federal Rules of Evidence 801(d)(2)(E) the hearsay declarations of Archambault made in furtherance of the conspiracy.

In the absence of objection at trial to the standard articulated by the district judge, we are limited to looking only for plain error and this failure to apply the strict *Petrozziello* standard does not rise to the level of plain error.

### IV. *Denial of Motion for Mistrial*

Pappas' final challenge concerns remarks made by the prosecution shortly before the close of all testimony at the trial. During cross-examination of Mrs. Gemmelaro, the prosecution posed a question concerning the pay records at Lowell Window Shade of Roger Houle and one Thomas

---

5. In *Lash v. United States*, 221 F.2d 237 (1st Cir.), *cert. denied*, 350 U.S. 826, 76 S.Ct. 55, 100 L.Ed. 738 (1955), we had occasion to note that the "guiding principle with respect to spontaneous notice of errors, which also applies to notice of assertions of error made by counsel for the first time on appeal, was clearly and succinctly stated in *United States v. Atkinson*, 1936, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 as follows: 'In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, of if they otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings.'" 221 F.2d at 240.

Hanson. The prosecution alluded that some irregularity might have been present in Hanson's employment as well as that of Houle's. Defense counsel objected to the question and was sustained. The court also instructed the jury to disregard the question. Pappas subsequently moved for a mistrial and that motion was denied. Pappas now argues that the remark in the presence of the jury was nonetheless so highly prejudicial as to constitute reversible error. We disagree.

Under Rule 404(b) of the Federal Rules of Evidence, evidence of bad acts or criminal offenses other than those with which the defendant is charged are inadmissible to show that the defendant was likely to have committed the act charged. Since Pappas was not charged with impropriety in the employment of Hanson, the remark was inadmissible and the judge properly ruled it inadmissible. Trial judges rightfully have wide latitude in correcting minor errors that occur at trial. *See Throckmorton v. Holt*, 180 U.S. 552, 557, 21 S.Ct. 474, 45 L.Ed. 663 (1901). In the instant case, the judge did everything in his power to eliminate any possible prejudice that might have resulted from the remark by not only sustaining defense counsel's objection, but by subsequently telling the jury to disregard the remark. *United States v. Bosch*, 584 F.2d 1113 (1st Cir. 1978). We have reviewed the record carefully, and in the absence of a clear showing of prejudice resulting from the incident, we have no occasion to disturb the District Court's ruling denying the motion for mistrial, for such motions are directed primarily to the discretion of the trial court, *Lash v. United States*, 221 F.2d 237, 242 (1st Cir.), *cert. denied*, 350 U.S. 826, 76 S.Ct. 55, 100 L.Ed. 738 (1955), and "will not be reversed absent abuse of that discretion." *United States v. Sclamo*, 578 F.2d 888, 891 (1st Cir. 1978). We can certainly find no abuse of discretion here.

Accordingly, for the reasons noted above, after careful consideration of the record and all submissions and after oral argument, we hold that the judgment of the District Court is AFFIRMED.