866 F.2d 431
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Thomas P. RACHAEL, Defendant-Appellant.
 No. 88-5240.
 United States Court of Appeals, Sixth Circuit.
 Jan. 18, 1989.
 
 Before KRUPANSKY and RYAN, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 RYAN, Circuit Judge.
 
 
 1
 Defendant Thomas P. Rachael appeals his conviction for bank robbery, 18 U.S.C. Sec. 2113(a) and (d), and for carrying a firearm during a crime of violence, 18 U.S.C. Sec. 924(c). Defendant argues that he was denied a fair trial due to (1) the testimony of a fingerprint expert that defendant's fingerprints were maintained at the Cincinnati Criminal Justice Center, and (2) the testimony of defendant's former parole officer identifying defendant in photographs of the bank robbery. We find no reversible error and affirm defendant's conviction.
 
 I.
 
 2
 Officer Clarence Caesar of the Cincinnati Police Department testified for the prosecution as a fingerprint expert. With his testimony, the prosecution intended to introduce into evidence fingerprint cards of defendant to be compared with fingerprints found at the scene of the bank robbery. The fingerprint cards to be introduced during Caesar's testimony were kept on file by the Cincinnati police department, apparently because of defendant's criminal record. As the prosecution attempted to introduce the fingerprint cards into evidence, the following exchange occurred between the prosecutor and Caesar:
 
 
 3
 Q. ... Do you recognize what is marked as Government's Exhibit 7?
 
 
 4
 A. Yes.
 
 
 5
 Q. What is it, please?
 
 
 6
 A. These are the cards that I copied myself of Thomas Rachael.
 
 
 7
 Q. Where are those original cards, please?
 
 
 8
 A. The original cards are at our Criminal Justice Center, it's where all the records are kept.
 
 
 9
 Defense counsel then objected and in a sidebar conference moved for a mistrial on the ground that Caesar's last statement had revealed to the jury that defendant had committed other crimes. The district court denied the motion for mistrial, but prohibited further inquiry into defendant's fingerprint cards maintained at the Criminal Justice Center. The court asked defense counsel if counsel wanted the court to give an admonishing instruction to the jury, but counsel declined so as "not to call it to their attention." On appeal, defendant maintains that he was entitled to a mistrial due to the prejudicial effect of Caesar's statement.
 
 
 10
 "[T]he decision as to whether a trial has been so tainted that a mistrial should be declared lies within the discretion of the district court." United States v. Bentley, 706 F.2d 1498, 1510 (8th Cir.), cert. denied, 464 U.S. 803 (1983), cert. denied, 467 U.S. 1209 (1984). Although we agree that reference to the fact that defendant's fingerprints were on file at the Cincinnati Criminal Justice Center would have been better left unsaid--because it does suggest that defendant may have a criminal record--we are satisfied that it was not an abuse of discretion for the district court to deny defendant's motion for mistrial. Caesar's statement was not a direct declaration that defendant had a criminal record; rather, it was an isolated, and apparently accidental, comment from which the jury might have inferred that defendant had committed other crimes. But even if the jury did draw this improper inference, the district court adequately neutralized any prejudice to defendant. The court prohibited further inquiry about the fingerprint cards and offered to given an admonishing instruction to the jury. See United States v. Pappas, 611 F.2d 399, 406 (1st Cir.1979). We hold that any error arising from Caesar's remark was harmless. Accordingly, we find no abuse of discretion in the district court's denial of defendant's motion for mistrial.
 
 
 11
 In a related argument, defendant contends that he was prejudiced by jury confusion resulting from the prosecution's subsequent introduction into evidence, as Exhibit 7, of a fresh exemplar of defendant's fingerprints after the prosecution had marked for identification but never introduced into evidence the original Exhibit 7, which was a copy of the defendant's fingerprint card on file at the Cincinnati Criminal Justice Center. We note, however, that defendant never objected to the substitute Exhibit 7. In the absence of plain error, "[a] party may not assert as error the introduction of evidence unless a timely objection is made." Helminski v. Ayerst Laboratories, Division of American Home Products Corp., 766 F.2d 208, 211 (6th Cir.), cert. denied, 474 U.S. 981 (1985). In any event, based on our review of the record, the prosecution and district court made clear to the jury that Exhibit 7 was the fresh fingerprints of defendant; therefore, we find no error, plain or otherwise, in this exhibit identification.
 
 II.
 
 12
 Defendant also argues that he was denied a fair trial by the district court's admission under Fed.R.Evid. 701 of testimony of Earl Mathews, defendant's former parole officer, identifying defendant as the bank robber in photographs of the robbery that had been admitted into evidence. After the court admitted this identification testimony, it conducted a voir dire examination of Mathews and discovered that Mathews's face-to-face interaction with defendant totalled approximately seventeen minutes. Based on this limited basis for identification, the court struck Mathews's identification testimony and admonished the jury not to consider it.
 
 
 13
 Defendant's argument that he was denied a fair trial by Mathews's identification testimony is based on United States v. Calhoun, 544 F.2d 291 (6th Cir.1976), in which this court reversed the trial court's admission of identification testimony of defendant's parole officer. The rationale of Calhoun was that such testimony was unfairly prejudicial under Fed.R.Evid. 403 because defendant would be unable to cross-examine effectively the parole officer without risking revelation that defendant had been on parole.
 
 
 14
 [T]he main defect in permitting [defendant's parole officer] to testify was that his broad assertion could not be tempered or probed by cross-examination. The defendant could not explore the possible motives his parole officer might harbor in positively identifying him as the robber. The defendant could not freely examine the relationship with [the parole officer] on which [the parole officer's] perception was founded.
 
 
 15
 Id. at 295.
 
 
 16
 This case is clearly distinguished from Calhoun. Here, after the trial court discovered that Mathews's basis for identifying defendant was limited, the court admonished the jury to disregard Mathews's identification testimony:
 
 
 17
 This last witness who testified with regard to his interpretation of the photos, on further interrogating him in your absence the Court concluded he did not know the defendant well enough to be of assistance to you in interpreting the photos, you can do that for yourselves....
 
 
 18
 ... The Court feels you have the photos and you have the defendant, you can interpret them for yourselves, whether or not it's him and consider that along with the other evidence you have to reach a verdict in the case.
 
 
 19
 Thus, Rachael, unlike the defendant in Calhoun, was not required to cross-examine the witness and risk revelation that Mathews had been defendant's parole officer. We hold that the district court's admonishing instruction effectively cured any potential error resulting from Mathews's testimony and the district court committed no abuse of discretion with regard to this testimony.[1]
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 Given the trial court's effective curative instruction, which struck Mathews's identification testimony and admonished the jury not to consider it, we need not decide whether the testimony--which identified defendant as the bank robber in photographs admitted into evidence--was admissible under Fed.R.Evid. 701 in the first place. We observe that although "[m]any courts have noted the helpfulness of lay opinion testimony in such circumstances," United States v. Allen, 787 F.2d 933, 934 (4th Cir.1986) (citing cases), vacated on other grounds, 479 U.S. 1077 (1987), this court has stated that such testimony "teases the outer limits of Rule 701." Calhoun, 544 F.2d at 295