February 19, 1993
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1536
UNITED STATES,

Appellant,

v.

BARKER STEEL CO., INC., AND
ROBERT B. BRACK,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]

Before

Cyr, Circuit Judge,

Bownes, Senior Circuit Judge,

and Fuste,* District Judge.

Peter A. Mullin, Assistant United States Attorney, with whom

A. John Pappalardo, United States Attorney, and Andrew E.

Lauterback, Special Assistant United States Attorney were on

brief, for appellant.
Paul F. Ware, Jr., with whom John C. Englander, Jeremy

Sternberg, and Goodwin, Procter & Hoar, Earle C. Cooley, and

Cooley, Manion, Moore & Jones were on brief, for defendants,

appellees.

February 19, 1993

*of the District Court of Puerto Rico, sitting by designation.

BOWNES, Senior Circuit Judge. The government appeals

the dismissal of an Information which charged the defendants,

Barker Steel Co., Inc. and Robert B. Brack, with engaging in

a conspiracy to defraud the United States in violation of 18

U.S.C. 371. The Information alleged that the defendants

fraudulently obtained Minority Business Enterprise and

Disadvantaged Business Enterprise (MBE) "set aside"

contracts. The district court found that the Information was

insufficient to sustain the charges and dismissed it.1 For

the reasons that follow, we reverse and remand for trial.

I.

Standard of Review

On appeal from the dismissal of an information, we

take the factual allegations in the information as true, and

we must reverse the dismissal if we find that, as a matter of

law, the information sufficiently sets forth the elements of

the offense charged. United States v. Torkington, 812 F.2d

1347, 1354 (11th Cir. 1987). We read an information as a

whole and we construe the allegations in a practical sense,

with all necessary implications.2 United States v.

1 United States v. Barker Steel Co., Inc., 774 F. Supp. 65

(D. Mass. 1991).

2 Prior to 1971, 18 U.S.C. 3731 limited government appeals
from dismissed informations or indictments to issues of law.
On appeal, the court was bound to accept the lower court's

-2-

nom., Zero v. United States, 459 U.S. 991 (1982); United

Cincotta, 689 F.2d 238, 242 (1st Cir.), cert. denied sub

law, including the lower court's interpretation of a statute,
(5th Cir.), cert. denied, 427 U.S. 903 (1978). Questions of

States v. Cadillac Overall Supply Co., 568 F.2d 1078, 1082

are reviewed de novo. United States v. M.I.M., 932 F.2d

construction by lower court).

-3-
States v. Besmajian, 910 F.2d 1153, 1154 (3d Cir. 1990)

and removed the restrictions on appeal. But see United

(following former rule and limiting review of allegations to
An information should be "a plain, concise and

An information is sufficient if it "first, contains the
constituting the offense charged." Fed. R. Crim. P. 7(c)(1).

elements of the offense charged and fairly informs a
definite written statement of the essential facts

second, enables him to plead an acquittal or conviction in
defendant of the charge against which he must defend, and,
1016, 1019 (1st Cir. 1991).

bar of future prosecutions for the same offense." Hamling v.

United States, 369 U.S. 749, 763-64 (1962); United States v.

language of the statute as long as the core facts of the
information is sufficient when allegations are made in the

criminality charged are also included. Russell 369 U.S. at

Penagaricano-Soler, 911 F.2d 833, 839 (1st Cir. 1990). An

764; Penagaricano-Soler, 911 F.2d at 839-40; United States v.

United States, 418 U.S. 87, 117 (1974); accord Russell v.

construction of allegations. Congress amended 3731 in 1971
Allard, 864 F.2d 248, 250 (1st Cir. 1989) ("The test for

sufficiency, therefore is not whether, in hindsight, the

indictment or information could have been more complete, . .

. but rather whether it fairly identifies and describes the

offense." (citations omitted)). Therefore, we examine the

Information as a whole to determine whether it sufficiently

charges the offense proscribed by the conspiracy statute.

II.

The Information

To begin, we summarize the key allegations of the

Information. The government's allegations concerning the

defendants' conspiracy to defraud the United States focus on

the MBE programs of several federal agencies, the U.S.

Department of Transportation (DOT), the Environmental

Protection Agency (EPA), and the General Services

Administration (GSA). These federal agencies intended the

MBE programs to "support[] the fullest possible

participation of firms owned and controlled by certain racial

minorities and women in the construction programs funded and

assisted by these departments and agencies." Information at

6. To that end, the MBE programs required that recipients

of funds from federal agencies establish goals or set aside a

percentage of federal funds received for contracts to

certified MBE businesses. Information at 7.

-4-

Federal agencies with MBE programs rely upon state

and local governments to certify applicants as qualified

minority businesses. Information at 9. To qualify for MBE

certification, at least fifty-one percent of the ownership of

the enterprise must be by certain minority groups, and the

minority owners must also control the daily operations of the

business. Information at 6. To implement the MBE program,

the entity receiving federal agency funding hires general

contractors to perform the work, who in turn award

subcontracts to certified MBEs to meet the percentage goal

for the project. For subcontract work to qualify for MBE

goals or set aside contracts, the MBE certified firm must

perform a "commercially useful function in the execution of

the project by actually performing, managing and supervising

the work involved." Information at 10. For materials and

supplies to qualify, the MBE certified firm must "either

produce the goods from raw materials or substantially alter

the goods before reselling them." Information at 10.

The Information alleges that from about October,

1982, until at least July, 1986, Barker Steel Company

(Barker) and its president, director and majority

stockholder, Robert B. Brack (Brack), conspired with others

to use Rusco Steel Company (Rusco) as a front company to win

MBE set aside contracts for Barker. Information at 13.

Barker was a Massachusetts corporation which furnished

-5-

fabricated steel reinforcing bars (re-bars) and other

products to the construction industry throughout New England.

Barker was never a certified MBE. Information at 1, 11.

Rusco, located in Rhode Island, had been certified as an MBE

in several states before the scheme with the defendants

began. Information at 3, 15.

The steel re-bar industry includes two distinct

functions: fabricators and erectors. Firms which operate as

fabricators "cut and bend the re-bars to meet the

specifications of a particular construction project and then

deliver the re-bars to the construction site." Information

at 5. The industry term for the work done by fabricators

is "furnish" work. Id. Firms known as erectors "place the

fabricated re-bars within the forms, at the job site, prior

to the pouring of the concrete." Information at 5.

Erector firms do "erection" work. Id.

In October, 1982, Barker agreed with Rusco that

Barker would finance a new division of Rusco for erecting

steel re-bar, "erection" work. Information at 5, 16. In

exchange, Rusco would allow Barker to market its steel

products through Rusco for re-bar "furnish" contracts to take

advantage of Rusco's MBE certification. Information at

13, 16. Prior to 1982, Rusco had operated as a broker of

steel re-bar but had not fabricated re-bar or erected re-bar.

Information at 15. Beginning in 1982, Barker employees

-6-

managed all aspects of the fabrication, sales and shipping of

steel re-bar and other products in its own name and in

Rusco's name when contracts required MBE certification.

Information at 16, 19, 20. Barker employees and Brack

exercised substantial control over Rusco throughout this

period. Information at 22, 25. In 1985, the defendants

merged a subsidiary company into Rusco, to deceive state MBE

certifying agencies about Rusco's eligibility for MBE

certification. Information at 25, 43.

As part of the scheme, Rusco submitted documentation

to various state and local agencies for the purpose of

obtaining or maintaining certification as an MBE.

Information at 32, 26, 41, 47. The documents submitted by

Rusco contained false, misleading and fraudulent statements

as well as material omissions. Id. The Information concludes

that as a result of the conspiracy, more than $5 million in

federally funded and federally assisted construction

contracts were improperly credited toward MBE goals when the

contracts actually benefitted Barker, which was not an MBE

firm. Information at 15. The conspiracy, according to the

Information, impeded, impaired, obstructed and defeated the

implementation, execution and administration of the MBE

programs of DOT, EPA and GSA. Information at 12.

III.

Discussion

-7-

The district court dismissed the Information on the

grounds that: (1) it failed to allege a violation by the

defendants of any MBE program statute; (2) it did not

clearly state a violation by the defendants of a duty owed to

the federal government, and (3) it failed to allege direct

contact with federal agencies. The defendants contend that

because the MBE program does not impose criminal penalties or

any obligations upon them, they were not fairly warned that

the conduct alleged in the Information could give rise to

criminal charges. In further support of the dismissal of the

Information, the defendants add that their alleged conduct

was not fraud because it did not deprive the federal

government of any money or property. The government counters

that the Information properly and sufficiently alleged that

the defendants conspired to defraud the federal government in

violation of 18 U.S.C. 371.

A. Legal Sufficiency of the Information

The Information charges that the defendants conspired

with others to defraud the United States in violation of 18

U.S.C. 371. The pertinent language of 371 provides as

follows:

If two or more persons conspire either
to commit any offense against the United
States, or to defraud the United States,
or any agency thereof in any manner or
for any purpose, and one or more of such
persons do any act to effect the object
of the conspiracy each shall be fined not

-8-

more than $10,000 or imprisoned not more
than five years, or both.

18 U.S.C. 371. To sufficiently charge a conspiracy to

defraud, the Information must allege the three essential

elements of section 371: "an agreement, the unlawful

objective of the agreement, and an overt act in furtherance

of the agreement." United States v. Hurley, 957 F.2d 1, 4

(1st Cir. 1992), cert. denied, 61 U.S.L.W. 3256 (U.S. Oct. 5,

1992). The objective of the agreement is unlawful if it is

"'for the purpose of impairing, obstructing or defeating the

lawful function of any department of Government.'" Dennis v.

United States, 384 U.S. 855, 861 (1966); (quoting Haas v.

Henkel, 216 U.S. 462, 479 (1910)).

In this case, the government alleged the defendants'

conspiracy to defraud in the language of the statute as

follows:

the defendants herein, BARKER STEEL CO.,
INC. and ROBERT B. BRACK, did knowingly,
willfully and unlawfully combine,
conspire, confederate and agree with
others, known and unknown, to defraud the
United States by impeding, impairing,
obstructing and defeating the lawful
governmental function of various
departments and agencies of the United
States, including particularly USDOT, EPA
and GSA, in the implementation, execution
and administration of their respective
MBE programs.
. . .

(All in violation of Title 18 United
States Code, Section 371.)

-9-

Information at 12, and final statement at page 13. The

Information also includes detailed factual allegations to

substantiate the cursory statutory allegations. The

defendants conspired with Rusco and others to establish Rusco

as a front company which the defendants used to obtain MBE

set aside contracts for furnishing steel re-bar on

construction projects funded in part by federal agencies.

The defendant corporation, Barker, was not an MBE and was,

therefore, not entitled to MBE contracts. Although Rusco may

have been a properly certified MBE at one time, during the

relevant period of the defendants' scheme, they financed and

controlled Rusco, thereby destroying its eligibility as an

MBE. Rusco maintained its MBE certification by supplying

false and misleading documentation to certifying agencies.

We continue our analysis of the sufficiency of the

Information to determine whether 371 provided fair warning

to the defendants that their conduct, as alleged, violated

the statute.

B. Sufficiency of the Allegations of Conspiracy

The defendants do not contend that the Information

failed to allege a conspiracy, nor did the district court so

find, and we find no deficiency. "The gist of conspiracy is

an agreement to disobey or to disregard the law." United

States v. Drougas, 748 F.2d 8, 15 (1st Cir. 1984); accord

United States v. Batista-Polanco, 927 F.2d 14, 19 (1st Cir.

-10-

1991); Penagaricano-Soler, 911 F.2d at 840. The Information

alleges that the defendants conspired with others, known and

unknown, to defraud the government and goes on to allege

conduct by the defendants, their employees, Rusco, and others

in furtherance of the conspiracy. Information at 12 and

passim.

The defendants argue, however, that because Rusco was

not named or charged as a co-conspirator in the Information,

actions by Rusco cannot be alleged to support the charges

against the defendants. There is no requirement that co-

conspirators be identified in an information, nor is there a

requirement that co-conspirators be charged with the same

offense to sustain the conviction of one co-conspirator.

Penagaricano-Soler, 911 F.2d at 840 n.5; United States v.

Sachs, 801 F.2d 839, 845 (6th Cir. 1986). Although Rusco is

not charged or named as a co-conspirator, the Information

alleges action which includes Rusco as a participant with the

defendants in the scheme to defraud the MBE programs.

Information at 13, 16. The reasonable inference from

those allegations is that Rusco was operating as a co-

conspirator. Further, the Bill of Particulars specifically

identifies Rusco as a co-conspirator.3 It is well settled

3 While a bill of particulars cannot cure a defective
indictment, it can provide notice of detail missing from an
information. See Fed. R. Crim. P. 7(e); 1 Charles A.

Wright, Federal Practice and Procedure Criminal 2d 129
(1982); United States v. Prince, 868 F.2d 1379, 1384 (5th

-11-

that members of a conspiracy are legally responsible for the

actions of a co-conspirator taken in furtherance of the

scheme. Pinkerton v. United States, 328 U.S. 640, 646-47

(1945); United States v. Baines, 812 F.2d 41, 42 (1st Cir.

1987); United States v. Fusaro, 708 F.2d 17, 21 (1st Cir.

1983). Therefore, actions by Rusco to obtain or maintain MBE

certification are properly alleged as elements of the

conspiracy.

C. Sufficiency of the Allegations of Fraud

The conspiracy statute proscribes two different

conspiracies: one to commit a specific offense, the "offense

clause," and the other to defraud the United States "in any

manner or for any purpose," the "defraud clause." Hurley,

957 F.2d at 3. The defendants were charged under the

"defraud clause" of 371.

At the start of our analysis, we acknowledge that the

defraud clause of 371 has been criticized for its general

language and potentially broad sweep. Dennis v. United

States, 384 U.S. 855, 860 (1966). Further, because there are

no common law crimes against the United States, we must

determine whether the defendants' alleged conduct is

"'plainly and unmistakably' within the province of [ 371]."

Cir. 1989) (observing that an information, unlike an
indictment, may be easily amended absent prejudice to
defendants).

-12-

United States v. Gradwell, 243 U.S. 476, 485 (1917). We,

therefore, scrutinize the Information carefully to determine

whether it sufficiently and properly alleges criminal conduct

in violation of 371.

The defendants contend that they lacked fair warning

that the conduct alleged in the Information would violate the

defraud clause of 371. The fair warning doctrine invokes

due process rights under the Fifth Amendment and requires

that the criminal statute at issue be sufficiently definite

to notify persons of reasonable intelligence that their

planned conduct is criminal. United States v. Harriss, 347

U.S. 612, 617 (1953) ("The constitutional requirement of

definiteness is violated by a criminal statute that fails to

give a person of ordinary intelligence fair notice that his

contemplated conduct is forbidden by the statute."); United

States v. National Dairy Corp., 372 U.S. 29, 31 (1963);

United States v. Anzalone, 766 F.2d 676, 678 (1st Cir. 1985).

We examine the statute, as we must, in the context of the

facts of this case. United States v. Mazurie, 419 U.S. 544,

550 (1975); United States v. Angiulo, 897 F.2d 1169, 1179

(1st Cir. 1990).

The defendants assert that 371 did not provide fair

warning that their alleged actions defrauded the MBE programs

of federal government agencies because the MBE programs did

not impose any duties on them. The district court found that

-13-

the MBE programs did not impose criminal sanctions or

penalties, or any obligations on subcontractors, such as the

defendants, and held that because the defendants had not

violated any duty imposed upon them by the MBE programs, they

could not have violated 371. The defendants primarily rely

on United States v. Murphy, 809 F.2d 1427 (9th Cir. 1987);

United States v. Anzalone, 766 F.2d 676 (1st Cir. 1985), and

United States v. Porter, 591 F.2d 1048 (5th Cir. 1979). We

find them inapposite to this case.

In United States v. Anzalone, 766 F.2d 676 (1st Cir.

1985), we addressed the problem of criminal prosecution of an

individual for alleged violations of the currency reporting

requirements before the applicable statutes were amended to

include such transactions. Anzalone did not involve 371.4

The government claimed that the defendant failed to notify

the bank that his deposits were part of the same event and

should have been reported as a "structured" transaction. The

essence of the government's charges was "that the appellant's

failure to inform the Bank of the 'structured' nature of his

transfers constituted an illegal scheme to avoid detection of

these payments by causing the Bank to fail in its duty to

report them." Id. at 679. We held that the defendant could

4 The defendant was not charged under 371 and 371 was not
discussed in the case. The defendant was charged and
convicted of violating 18 U.S.C. 2, 1001 and 31 U.S.C.
5313, 5322.

-14-

not be held criminally liable under the crimes charged for

failing to report the transaction when the Reporting Act did

not impose a duty on him to do so.

Our analysis in Anzalone is easily

distinguishable from this case. In addition to the fact that

Anzalone does not address 371, the defendant was charged

with a crime for failure to act. As we held in Anzalone,

omission can only constitute a crime if the accused had a

duty to act. In this case, however, the defendants are

charged with defrauding the government by their actions, not

by failure to act, and therefore, the analysis in Anzalone is

inapplicable.

Similarly, in United States v. Murphy, 809 F.2d

1427 (9th Cir. 1987), the defendants' alleged crimes arose

from their failure to act. The defendants were charged with

violating 371 because they failed to disclose the source of

the funds they deposited which the government alleged

constituted a conspiracy to impair the function of the

Internal Revenue Service in the collection of taxes. The

court found that the defendants had honestly and accurately

completed the currency transactions reports which were

required, had no duty to inform anyone of the source of the

deposited money, and therefore had not committed any illegal

activity. The court, in dicta, suggested that violations of

371 require violation of other criminal statutes. Id. at

-15-

1432. Moreover, the Ninth Circuit has explained and limited

its decision in Murphy:

Dicta in Murphy can be construed to

require that a conspiracy charge under
section 371 be based upon conduct that
has "been proscribed by criminal
statute." Id. Any such construction is

incorrect in light of Dennis. We read

Murphy and Varbel [United States v.

Varbel, 780 F.2d 758 (9th Cir. 1986)]

only to mean that a section 371
conviction may not be based upon a
failure to volunteer information that is
not required to be provided to the
government, or upon the furnishing of
correct information; such acts do not
sufficiently impair the functioning of
the government to support a criminal
conviction.

United States v. Tuohey, 867 F.2d 534, 538 (9th Cir. 1989).

In Tuohey, the court held that the government had properly

charged the defendants under 371 because the defendants had

failed to report currency transactions as they were required

to do by statute.

In United States v. Porter, 591 F.2d 1048 (5th

Cir. 1979), the government charged a group of doctors and a

laboratory operator with Medicare fraud and conspiracy to

defraud the government under 371. On appeal, the court

reversed the convictions and dismissed the indictments

finding that the government had not properly charged or

proved a conspiracy to defraud the government under 371. In

summary, the government alleged that the doctor defendants

had sent lab work to the laboratory operator defendant's

-16-

manual laboratories because they received a payment for doing

so, rather than to automated laboratories which might have

processed the work more quickly and more cheaply. Although

the facts relating to the practice which provided payment

back to the doctors are complex, the effect was obvious--the

doctors sent their lab work to the laboratories which

provided the payments and not to the automated laboratories.

The charges to Medicare, however, were not increased by the

practice and were within the guidelines for lab work in the

area, and the quality of the work was not an issue. Further,

the defendants did not violate any Medicare rules,

regulations or other requirements by using manual

laboratories. The government charged that the practice,

nevertheless, violated 371 because it defrauded the

government's "right to have the Medicare program conducted

honestly and fairly." Id. at 1056. The government's

allegations established that the defendants failed to use the

most cost effective laboratories, the automated laboratories,

but did not show that the defendants were required to do so,

and the allegations also showed that the defendants complied

with the applicable rules and regulations of Medicare. The

court found that the government did not prove that the

defendants had interfered with lawful functions of the

Medicare program as required for criminal liability under

371.

-17-

None of the cases relied upon by the defendants

involve the situation before us: affirmative acts of

misrepresentation and deceit to thwart the operation and

purpose of a government program. Conspiracy to thwart the

operation and purpose of a government program through deceit

and trickery is prohibited by 371. Hammerschmidt v. United

States, 265 U.S. 182, 188 (1924); United States v. Bucey, 876

F.2d 1297, 1312-13 (7th Cir.), cert. denied, 493 U.S. 1004

(1989).

As noted earlier, 371 proscribes two distinct types

of conspiracies: (1) conspiracies to commit a specific

offense against the United States, included elsewhere in the

criminal code, and (2) conspiracies to defraud the United

States. The essence of the defendants' theory is that if no

other federal law or regulation proscribes alleged conduct,

then the defendants cannot be held criminally responsible

pursuant to 371 because they owe no duty to the federal

government.5 The defendants' theory reflects a

5 This theory is distinguishable from United States v.

Minarik, 875 F.2d 1186 (6th Cir. 1989), where the defendants

were charged and convicted under the defraud clause of 371
although a specific provision of the Tax Code proscribed
their conduct. In Minarik the court overturned the

convictions on the grounds that the case should have been
brought under the offense clause of 371 to avoid confusion
to the defendants concerning what conduct was considered
illegal.

-18-

misunderstanding of the function of the two clauses of

371.6 If the second clause were interpreted to require

commission of a specific offense, it would have the same

meaning as the first clause thus rendering the second clause

redundant. Whenever possible, we will not interpret a

statute in such a way as to cause redundancy. Breest v.

Cunningham, 752 F.2d 8, 10 (1st Cir. 1985).

Recently we examined the defraud clause of 371 in

the context of an appeal from conviction for conspiracy to

impair the function of the IRS in United States v. Hurley,

957 F.2d 1 (1st Cir. 1992), and held that the defraud clause

does not depend on allegations of other offenses. In Hurley,

the defendants helped a drug smuggler hide and invest $5

million of his illegal earnings thereby thwarting the lawful

function of the IRS to levy and collect income taxes. The

defendants in Hurley argued that the indictment was invalid

for failing to charge them under the offense clause of 371

with specific tax code violations. The defendants also

argued that because there were no laws prohibiting their

particular money laundering activities, they had no duty to

the government under 371 not to engage in money laundering.

We found that the defendants had engaged in a long-standing

6 The defendants' theory does not raise the due process
problems presented in United States v. Haga, 821 F.2d 1036

(5th Cir. 1987), where the defendants were charged under the
offense clause of 371 but were convicted, apparently, under
the defraud clause.

-19-

and complex conspiracy to deceive the IRS rather than a

limited scheme proscribed by a single section of the tax

code. We held that the defraud clause was properly charged

because it can best address a conspiracy which encompasses a

broad range of conduct for the unlawful purpose of impairing

the function of the IRS. See also Dennis v. United States,

384 U.S. at 860 (holding that the true nature of the crime

was the entire conspiracy to falsely obtain benefits from the

N.L.R.B., in violation of 371, and not merely the false

statements made in furtherance of the conspiracy); United

States v. Bucey, 876 F.2d at 1312-13 (holding that actions

which are themselves legal may constitute a criminal

conspiracy in violation of 371 if they are part of a

conspiracy to obstruct by deceit, craft or trickery the

lawful function of a government agency).

In the present case, the government alleges that the

defendants concocted an elaborate scheme with Rusco to use

Rusco as a front company to procure MBE set aside contracts

for steel re-bar furnish work which would actually be done

by the defendants. The scheme, as alleged, began in 1982 and

continued into 1986. Although Rusco was indicted for the

specific offense of filing false statements in violation of

18 U.S.C. 1001, the defendants' conspiracy aimed at a

broader goal, impeding the purpose and function of the MBE

programs. The defendants' scheme is the kind of complex

-20-

conspiracy which the defraud clause is intended to proscribe,

and which might not be prosecuted adequately by addressing

separate occurrences of illegal conduct.7

The defendants in Hurley fared no better with their

second argument. They argued that because their money

laundering activities were not prohibited by specific

statutes, they lacked fair warning that they could be

prosecuted under the defraud clause of 371. We rejected

their argument and held that if the "defendants knowingly

participated in laundering drug proceeds, inevitably

hindering the IRS in its ability to collect . . . taxes,

their convictions under 371's defraud clause are

unassailable." Id. at 4; accord United States v. Cambara,

902 F.2d 144, 147 (1st Cir. 1990) ("The conspiracy statute

does not require that unlawful means be used to achieve the

unlawful goal of the conspiracy.").

7 In Dennis, 384 U.S. 855, the defendants argued that they

should have been charged, if at all, under the offense clause
of 371 for the substantive offense of making false
statements but for the time bar of the statute of
limitations. The Court held, however, that the charge of
conspiracy to defraud the government properly stated the
nature of the defendants' offense and was not "an attempt by
prosecutorial sleight of hand to overcome a time bar." Id.

at 863. In this case, we also reject the defendants' claim
that the government resorted to 371 to circumvent the
statute of limitations barring a charge pursuant to 18 U.S.C.
1001. As in Dennis, while it is true that the defendants

may have violated 1001 in perpetration of the conspiracy,
the gravamen of the charge is the scheme to defraud the MBE
program and not merely the making of false statements.

-21-

Taken as a whole, the Information charges that the

MBE re-bar "furnish" contracts obtained in Rusco's name were

merely passing through Rusco, as a front, to Barker. The

defendants used Rusco to win MBE contracts to "furnish" re-

bar because the defendants could not have obtained those

contracts directly. The result was that a non-MBE got the

benefit of contracts which the MBE program intended for

minority businesses. Both the defendants and the district

court below rely on the fact that Rusco was a certified MBE

during the existence of the conspiracy, implying that

contracts which went to Rusco were proper under the affected

MBE programs.

A scheme to use a minority business as a front

company was addressed in United States v. Anderson, 879 F.2d

369 (8th Cir. 1989). The court found that the minority

business certification requirements of the Small Business

Administration were intended to insure that front companies

did not usurp program benefits:

To become certified for the [SBA
minority business] program, a business
must establish that it is socially or
economically disadvantaged, is owned by a
minority person and not a mere front for
a non-[minority certified] business, is
actually controlled by a minority person,
and will be performing at least 15
percent of the government contract.

Id. at 372. The Anderson defendants used a certified

minority business as a front to obtain SBA set aside

-22-

contracts when the contract work was actually subcontracted

to other, non-minority, businesses. Compare United States v.

Porter, 591 F.2d 1948 (5th Cir. 1979) (affirming dismissal of

an indictment which charged doctors and a laboratory worker

with a kickback scheme to defraud Medicare in violation of

371 because there was no Medicare policy or regulation which

prohibited doctors from taking such payments and Medicare

costs were not increased).

It is reasonable to infer that the MBE certification

requirements for the agencies alleged in this case are

intended to prevent non-MBEs from taking advantage of MBE set

aside contracts.8 The MBE certification requirements impose

duties upon the defendants and others not to subvert the

system established to benefit minority businesses. Because

Rusco did not do the re-bar "furnish" work specified in the

contracts, Rusco was operating as a front for Barker which

8 The Information summarized, rather than citing, the
regulations which control the MBE programs of the DOT, EPA
and GSA which provides sufficient understanding of the
function of the programs. Nevertheless, the pertinent
language of the regulation for MBE certification for the DOT
is instructive:

To ensure that this part benefits only
MBEs which are owned and controlled in
both form and substance by one or more
minorities or women, DOT recipients shall
use Schedules A and B . . . to certify
firms who wish to participate as MBEs in
DOT under this part.
49 C.F.R. 23.51.

-23-

did the "furnish" work and received the contract payments.

As the government alleges, MBE contracts can only be awarded

to MBEs who actually do the work, and therefore, the

defendants' use of Rusco was a fraud on the MBE programs.

Just because the defendants used Rusco, a certified MBE, to

subvert the MBE requirements does not make their actions less

reprehensible.

The Information also alleges that Rusco fraudulently

maintained its MBE certification after 1982. The defendants

counter that the Information cannot properly charge them with

defrauding the government based upon false documentation

submitted by Rusco to various MBE certifying agencies because

there is no allegation that the agencies relied upon the

false documentation to certify Rusco. In Dennis, 384 U.S.

855, the Supreme Court found that an indictment which charged

members of a mine workers' union who submitted false

affidavits, stating that they were not Communists, in order

to procure the services of the National Labor Relations

Board, properly stated a conspiracy to defraud the

government pursuant to 371. The defendants objected that

the affidavits did not defraud the Board because it did not

rely on the veracity of the non-Communist affidavits, but

instead relied only on the fact that they were filed. In

response, the Court held as follows:

The facts are, according to the
indictment, that petitioners and their

-24-

co-conspirators could not have obtained
the Board's services and facilities
without filing non-Communist affidavits;
that the affidavits were submitted as
part of a scheme to induce the Board to
act; that the Board acted in reliance
upon the fact that affidavits were filed;
and that these affidavits were false.
Within the meaning of 371, this was a
conspiracy to defraud the United States
or an agency thereof.

Dennis at 862. The effect of the conspiracy and the false

affidavits was that the defendants' trade union gained the

benefit of the Board's services and facilities despite the

fact that the union was not qualified because some of its

officers were Communists. The Court held that the conspiracy

defrauded the government by impeding the function of the

Board to implement its policy to exclude unions with

Communist officers. Similarly, in this case, Rusco could

not have maintained its certification as an MBE without

filing the required documentation. Because the defendants

had taken control of Rusco, the documentation filed by Rusco

contained false and misleading information and material

omissions which directly affected Rusco's eligibility as an

MBE. Unless Rusco maintained its MBE certification, the

defendants' scheme to obtain MBE set aside contracts would

have failed. The state and local MBE certification agencies

granted MBE certification to Rusco in response to Rusco's

fraudulent documentation. Therefore, Rusco's filings for MBE

certification were at the core of the defendants' conspiracy

-25-

and may be considered as a part of the fraudulent activity in

furtherance of the conspiracy. Even if Rusco had been a

properly certified MBE, however, "[a] method that makes use

of innocent individuals or businesses to reach and defraud

the United States is not for that reason beyond the scope of

371." Tanner v. United States, 483 U.S. 107, 129 (1986).

This court has considered the meaning of the defraud

clause in 371 and its substantially similar predecessors,

and found actions which defrauded the United States in a

variety of circumstances. Curley v. United States, 130 F. 1,

11-12 (1st Cir. 1904), cert. denied, 195 U.S. 628 (affirming

the sufficiency of an indictment charging conspiracy to

defraud the government by a defendant who took a civil

service exam for another man to help him gain a position as a

letter carrier and defining defrauding the government as:

"'any act committed with a view of evading the legislation of

Congress passed in the execution of any of its powers, or of

fraudulently securing the benefit of such legislation, may

properly be made an offense against the United States.'");

Harney v. United States, 306 F.2d. 523 (1st Cir. 1962), cert.

denied sub nom. O'Connell v. United States, 371 U.S. 911

(affirming indictment for hampering the lawful operation of

the Bureau of Public Roads of the Department of Commerce in

the administration of the Federal Aid Highway program);

-26-

United States v. Pappas, 611 F.2d 399 (1st Cir. 1979)

(affirming conviction of conspiracy to defraud government

based on a scheme to misuse funds intended for the CETA

program).

Finally, dishonest conduct is at the heart of the

crime of defrauding the government. The Supreme Court

defined "defraud" in a substantially similar predecessor

statute to 371 as follows:

To conspire to defraud the United
States means primarily to cheat the
government out of property or money, but
it also means to interfere with or
obstruct one of its lawful governmental
functions by deceit, craft or trickery,
or at least by means that are dishonest.
It is not necessary that the government
shall be subjected to property or
pecuniary loss by the fraud, but only
that its legitimate official action and
purpose shall be defeated by
misrepresentation, chicane, or the
overreaching of those charged with
carrying out the governmental intention.

Hammerschmidt v. United States, 265 U.S. 182, 188 (1924).

The defendants in Hammerschmidt were indicted for

distributing leaflets and other materials urging resistance

to the draft during World War I. The Court held that

although the defendants' conduct was aimed at impairing the

function of the Selective Service, a lawful government

function, it was open defiance and not a scheme involving

deceit or trickery, and therefore, could not be charged

within the meaning of defrauding the government.

-27-

The allegations in this case do not present a

situation where defendants conspired to do something which,

in itself, was innocent, but which had the unintended effect

of thwarting the MBE programs. Nor were the defendants

engaging in open defiance or protest against the MBE

programs. The defendants' actions, as alleged, involved

deceit and trickery to benefit the defendants by hampering a

lawful government function. A conspiracy of this kind has

long been recognized to defraud the government.

The Information alleges that "[p]ursuant to this

unlawful conspiracy in excess of $5 million in federal and

federally assisted construction contracts were improperly

credited towards the MBE goals of the various departments and

agencies of the United States."9 Information at 14.

While this allegation could be more forcefully stated, taking

the Information as a whole and with all necessary

implications, the meaning is clear: the defendants conspired

with others to defraud the DOT, EPA and GSA, agencies of the

United States, in the implementation of their MBE programs by

using Rusco to win MBE set aside contracts which the

defendants would not otherwise have been eligible to receive.

9 The defendants do not challenge the validity of the MBE
program. It is uncontroverted, in this case, that the MBE
program is a lawful function of government. And see

Fullilove v. Klutznick, 448 U.S. 448 (1980) (upholding

constitutionality of an MBE program).

-28-

As a result, the scheme diverted $5 million in contracts from

MBEs to Barker.

In thirteen pages containing forty-eight paragraphs,

the Information details actions by which the defendants,

Rusco and others accomplished their objective to obtain MBE

contracts for the benefit of the defendants. The allegations

show that the defendants were well aware of the purpose of

the MBE programs, certification requirements, goals and set

aside contracts, and that any reasonably intelligent person

in the defendants' situation should have known that their

conspiracy could have criminal consequences. Taken as a

whole, the Information sufficiently alleges fraudulent

conduct by the defendants and their co-conspirators to

impair, defeat, or obstruct the function of the MBE programs

involved in this case. We move on to consider whether the

fraud was perpetrated against the United States.

D. Sufficiency of Allegations of Contact with United States

The defendants assert, and the district court held,

that the Information fails to allege that the defendants

conspired to defraud the United States or an agency of the

United States. In Tanner v. United States, 483 U.S. 107

(1987), the Supreme Court considered whether a kickback

conspiracy to procure and keep a construction contract on a

project which was funded by federally guaranteed loans

constituted defrauding the United States within the meaning

-29-

of 371. In Tanner, 483 U.S. 107, the Rural Electrification

Administration (REA) guaranteed loans for the construction of

a power plant for an electric cooperative (Seminole) in

Florida. The procurement manager for Seminole conspired with

his friend to get contracts for the project with kickback

payments to the manager.

The defendants argued on appeal that the evidence at

trial showed that the target of the conspiracy was Seminole

and not the federal government. The government responded

that, because Seminole's construction project received

federal financial assistance and some federal supervision, a

conspiracy to defraud Seminole was the same as a conspiracy

to defraud the government. The Court rejected the

government's explanation and held:

The conspiracies criminalized by 371
are defined not only by the nature of the
injury intended by the conspiracy, and
the method used to effectuate the
conspiracy, but also and most
importantly by the target of the

conspiracy.

Tanner at 130. The Court also held, however, that

conspiracies to defraud the federal government may be

accomplished through intermediaries, innocent third parties,

and the Court remanded the case to determine whether the

defendants conspired to cause Seminole to make

misrepresentations to the REA. Tanner at 132.

-30-

In this case, the government alleged that the MBE

programs of the involved federal agencies were the target of

the defendants' conspiracy to defraud. Information at 12.

The Information supports the general allegation in statutory

language with detail of the workings of the MBE programs and

the actions by the defendants which harmed the MBE programs.

The Information alleges that the defendants' scheme caused

"in excess of $5 million in federal and federally assisted

construction contracts [to be] improperly credited towards

the MBE goals of the various departments and agencies of the

United States." Because the purpose of the MBE programs, as

alleged, is to insure that at least ten percent of federal

and federally assisted construction project contracts be

awarded to MBE companies, the defendants' scheme to divert

MBE contracts through Rusco to benefit themselves obstructed

the proper function of the MBE programs. The Information

taken as a whole clearly alleges that the target of the

defendants' conspiracy was $5 million worth of MBE set aside

contracts which should have been awarded to minority

businesses.

The Information does not allege that either the

general contractors or the state agencies implementing MBE

certification were operating as federal agencies based on

their receipt of federal and federally assisted funds. The

misrepresentations and fraud to general contractors and MBE

-31-

certifying agencies by the defendants and co-conspirators

were the means to the end, using innocent third parties to

effect their scheme. The Information sufficiently alleges a

conspiracy which targeted a federal function, the MBE

programs of the DOT, EPA and GSA, and therefore, properly

charges a conspiracy to defraud the United States.

E. Sufficiency of Allegations of Harm to the United States

The defendants argue that the Information fails to

allege a crime under 371 because it does not allege that

the defendants defrauded the federal government of money or

property. There is no basis for the defendants' argument.

The language of the statute itself is broad: "If two or more

persons conspire . . . to defraud the United States, or any

agency thereof in any manner or for any purpose. . ." 18

U.S.C. 371 (emphasis added). At least since Haas v.

Henkel, 216 U.S. 462 (1910), the Supreme Court has recognized

that 371 (and its substantially similar predecessors) were

not limited to conspiracies which defraud the government of

money or property: "The statute is broad enough in its terms

to include any conspiracy for the purpose of impairing,

obstructing or defeating the lawful function of any

department of Government." Id. at 479.

Although the Supreme Court has limited the scope of

mail fraud, 18 U.S.C. 1341, to the protection of property

-32-

rights, that limitation is restricted to the mail fraud

statute. McNally v. United States, 483 U.S. 350, 360 (1987);

and id. at 368 (Stevens, J., dissenting); United States v.

Smith, 891 F.2d 703, 713 (9th Cir. 1989), modified on other

grounds, 906 F.2d 385, cert. denied 111 S.Ct 47 (1990)

(McNally's narrow definition of "defraud" does not extend to

371.). We decline to extend the McNally limitation to

371.

IV.

Conclusion

We hold that the Information sufficiently alleges a

conspiracy to defraud the government pursuant to 371 in

the language of the statute and with sufficient supporting

detail to adequately notify the defendants of the charges

against them. The history of interpretation of 371

demonstrates that the statute proscribes conspiracies, such

as the defendants' conspiracy, which target federal programs

and which intend to deceitfully secure the benefit of those

programs. In other words, the defendants had a duty imposed

pursuant to 371 not to divert the benefit of the MBE

programs from their intended recipients, qualified and

certified minority businesses, to themselves. The statute

itself provides fair warning that the defendants' alleged

conspiracy may be charged as criminal under 371.

-33-

Therefore, we reverse the decision of the lower court and

remand for trial.

-34-